**BASS et ux. v. STOCKTON et al.**

No. 12189.

Court of Civil Appeals of Texas.
San Antonio.

Jan. 10, 1951.

Rehearing Denied Feb. 7, 1951.

William E. Remy, George A. Wiggin, San Antonio, for appellant.

Lang, Byrd, Cross & Ladon, San Antonio, for appellee.

NORVELL, Justice.

This is an automobile collision case in which judgment was rendered for the defendants upon a jury verdict. The collision occurred on the sixth day of July, 1949, when an automobile owned by Jess Stockton and driven by his son, Douglas Stockton, ran into the rear end of an automobile driven by Mrs. Mary E. Bass. There seems to be no basis for a reversal of the judgment, insofar as Jess Stockton is concerned, and the judgment that appellants take nothing against him will be affirmed. All of the points asserting that the judgment should be reversed as to Douglas Stockton are based upon a motion for new trial, rather than upon a motion for judgment.

The controlling question in the case is the sufficiency of the evidence to support the jury's answers to Special Issues Nos. 19 and 20, whereby the jury found that Mrs. Bass "failed to keep such lookout for traffic of automobiles on the street, both in front and behind her said automobile, as an ordinarily prudent person would have kept under the same or similar circumstances" and that "such failure * * * was a proximate cause of the collision in question." (Appellants made a motion that the jury's answers to these issues be disregarded, but it was not coupled with a request for rendition of judgment for appellants.)

The evidence for the most part is uncontradicted. Such conflicts as do exist will be noticed and the version of the successful party below will be accepted.

Mrs. Bass was proceeding in a northerly direction along South Flores Street in the City of San Antonio, Texas. She was followed by Douglas Stockton who was driving his father's automobile. There is a traffic light at the intersection of South Flores Street and Huff Avenue. Mrs. Bass stopped for this traffic light, but Stockton failed to stop in time and ran into the rear end of the Bass automobile. The jury convicted Stockton of several acts of negligence proximately causing the collision.

Mrs. Bass testified that the traffic light was red when she brought her car to a stop. Stockton, however, testified that the yellow light was on when the Bass car stopped in front of him. Stockton's version of the events immediately preceding the collision (reduced to a narrative) was as follows: "There were three or four cars ahead of me going through the traffic light at South Flores and Huff Avenue. I saw this car (the Bass automobile) and we were both trying to make the light which was then green, but it changed to amber and she (Mrs. Bass) stopped and I didn't stop as quick as she did. I was travelling about twenty-five miles an hour and about two car lengths behind the Bass car, and when the Bass car stopped I didn't have time to do anything, I just clamped on the brakes and slid into her."

Appellees pleaded that Mrs. Bass had failed to give a hand signal notifying the cars following her of her intention to stop. The jury found that appellees failed to prove this allegation. Mrs. Bass testified that she did give a hand signal.

The facts of this case restrict the inquiry as to Mrs. Bass' alleged negligence to the question of whether or not she failed to keep a proper lookout for automobiles on the street *behind* her. By accepting Douglas Stockton's testimony that the yellow or amber light was on when Mrs. Bass stopped, the question may be stated in accordance with the fundamental rule of tort liability as follows: Did Mrs. Bass violate any legal duty to Stockton by stopping her automobile when the traffic light changed to yellow?

Section 33 of the Uniform Act Regulating Traffic on Highways, Article 6701d, § 33, Vernon's Civil Statutes, provides that:

"Whenever traffic is controlled by traffic-control signals exhibiting the words 'Go,' 'Caution,' or 'Stop,' or exhibiting different colored lights successively one at a time, or with arrows, the following colors only shall be used and said terms and lights shall indicate and apply to drivers of vehicles and pedestrians as follows:

"(a) Green alone or 'Go.'

"1. Vehicular traffic facing the signal, except when prohibited under Section 83, may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. * * *

"(b) Yellow alone· or 'Caution' when shown following the green or 'Go' signal.

"1. Vehicular traffic facing the signal is thereby warned that the red or 'Stop' signal will be exhibited immediately thereafter and such vehicular traffic shall not enter or be crossing the intersection when the red or 'Stop' signal is exhibited. * * *

"(c) Red alone or 'Stop.'

"1. Vehicular traffic facing the signal shall stop before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection and shall remain standing until green or 'Go' is shown alone. * * *"

The statute provides that vehicular traffic shall not be crossing the intersection when the red light which follows the yellow light is exhibited.

 This obviously means that one should not drive his automobile into an intersection having a traffic light unless he can clear the intersection before the red light comes on.

There is no circumstance here, other than the fact that Mrs. Bass stopped on a yellow light, which can be relied upon to support the finding that she failed to keep a proper lookout for the automobile following her. It was not shown that she was speeding immediately prior to arriving at the intersection, nor that she failed to signal her intention to stop. She simply failed to run the yellow light as Stockton perhaps

thought she would. It seems to us that in view of the wording of the statute, as well as for considerations of personal safety, a cautious person would stop on a yellow light, and evidence showing that a motorist did that and nothing more is insufficient to support a finding of negligence. The law does not require one to employ split-second timing in determining whether to cross a street intersection on a yellow light or not.

It seems that Mrs. Bass' omission, if any, was in failing to observe the Stockton car in her rear vision mirror. Since she stopped her car in conformity with the provisions of the law and it was not shown that she failed to give a proper signal to the car following her, it is clear that the jury's answer to the proximate cause issue is likewise without sufficient support in the evidence.

The judgment as to Jess Stockton is affirmed, but, for the errors pointed out, the judgment of the trial court as to Douglas Stockton is reversed and the cause remanded. Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063; Caraway v. Behrendt, Tex.Civ.App., 224 S.W.2d 512; Valley Film Service v. Cruz, Tex.Civ.App., 173 S.W.2d 952; LeSage v. Smith, Tex.Civ. App., 145 S.W.2d 308, 28 Tex. Law Review 866.

Reversed and Remanded.